Case No. 23-1534

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

PARENTS PROTECTING OUR CHILDREN, UA,

        Plaintiff-Appellant,

   v.

EAU CLAIRE AREA SCHOOL DISTRICT, WISCONSIN,
TIM NORDIN, LORI BICA, MARQUELL JOHNSON,
PHIL LYONS, JOSHUA CLEMENTS, STEPHANIE FARRAR,
ERICA SERR, and MICHAEL JOHNSON,

        Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 3:23-cv-508
The Honorable Stephen L. Crocker, Magistrate Judge

---

## BRIEF OF THE DEFENDANTS-APPELLEES

---

Ronald S. Stadler (counsel of record)
Jonathan E. Sacks
STADLER SACKS LLC
Attorneys for Defendants-Appellees
3070 Helsan Drive, Suite J
Richfield, Wisconsin 53076
(262-304-0610)

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As      Clear Form

Appellate Court No: 23-1534

Short Caption: Parents Protecting Our Children, UA v. Eau Claire Area School District, Wisconsin, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Eau Claire Area School District,  Wisconsin, Tim Nordin, Lori Bica, Marquell Johnson, Phil Lyons, Joshua Clements,

Stephanie Farrar, Erica Zerr, and Michael Johnson

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Stadler Sacks LLC

Kopka Pinkus Dolin PC

(3)      If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

N/A

ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Ronald S. Stadler          Date:

Attorney's Printed Name:  Ronald S. Stadler

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address:  3070 Helsan Drive, Suite J

Richfield, WI 53076

Phone Number: 262-304-0610          Fax Number:

E-Mail Address: rss@stadlersacks.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1534

Short Caption: Parents Protecting Our Children, UA v. Eau Claire Area School District, Wisconsin,  et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Eau Claire Area School District,  Wisconsin, Tim Nordin, Lori Bica, Marquell Johnson, Phil Lyons, Joshua Clements,

Stephanie Farrar, Erica Zerr, and Michael Johnson

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Stadler Sacks LLC

Kopka Pinkus Dolin PC

(3)  If the party, amicus or intervenor is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Jonathan E. Sacks                     Date:

Attorney's Printed Name:  Jonathan E. Sacks

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [ ]    No [✔]

Address:  3070 Helsan Drive, Suite J

Richfield, WI 53076

Phone Number:  262-304-0610                     Fax Number:

E-Mail Address:  jes@stadlersacks.com

rev. 12/19 AK

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

JURISDICTIONAL STATEMENT ................................................................... 1

STATEMENT OF THE ISSUES ...................................................................... 2

STATEMENT OF THE CASE ........................................................................ 2

   I.    NATURE OF THE CASE ..................................................................... 2

   II.   COURSE OF PROCEEDINGS AND DISPOSITION BELOW ...................... 4

SUMMARY OF ARGUMENT .......................................................................... 5

ARGUMENT ................................................................................................ 7

   I.    STANDARD OF REVIEW .................................................................... 7

   II.   PLAINTIFF CANNOT ESTABLISH ASSOCIATIONAL STANDING BECAUSE NONE OF ITS MEMBERS HAVE SUSTAINED AN INJURY IN FACT. ............................................................................................ 8

      A. Because Plaintiff Has Not Been Injured, It Is Forced To Rely Upon A Claim Of Associational Standing, A Standard It Cannot Meet ............... 9

      B. Nothing In The Complaint Plausibly Suggests That Any Of Plaintiff's Members Have Suffered An Injury In Fact ........................................ 10

      C. A possible future event that will arise only if a speculative chain of possibilities occurs is not a concrete injury for purposes of standing ........................................................................................ 11

      D. One's status as a parent of a student does not confer standing to challenge a policy if the parent has not been impacted by the policy .......................................................................................... 16

      E. Plaintiff's "transfer of decision-making authority" theory mischaracterizes the Guidance and fails to acknowledge that its members have not been impacted by the Guidance .............................. 18

         a. Plaintiff's claim that the Guidance transfers decision-making authority is unfounded ............................................................ 19

         b. Plaintiff's reliance on a string of future contingencies to create its claimed "transfer of decision-making authority" does not create a concrete and particularized impact on Plaintiff's members ....................................................................... 21

1. Plaintiff's Claim of "informational standing" is misguided as the Guidance does not prevent Plaintiff's members from receiving any information that they are entitled to……………………………………………………………..23

2. The existence of the Guidance cannot be found to interfere with the parent-child relationship without proof that it has been applied to a particular member…………………………..26

F. There Is No Risk Of Harm That Is Sufficiently Imminent And Substantial That Would Allow One Of Plaintiff's Members To Bring A Pre enforcement Challenge To The Guidance…………………………………..27

III.   THE EXISTENCE OF THE GUIDANCE HAS NOT PREVENTED PLAINTIFF'S MEMBERS FROM EXERCISING ANY RIGHTS…………..33

IV.   THE PPRA DOES NOT ASSIST PLAINTIFF IN SHOWING THAT ITS MEMBERS SUSTAINED AN INJURY IN FACT……………………………..35

CONCLUSION………………………………………………………………………………… 39

## <u>TABLE OF AUTHORITIES</u>

Cases

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227, 57 S. Ct. 461, 81 L. Ed. 617 (1937)................................................31

*Am. C.L. Union of Illinois v. Alvarez*,
  679 F.3d 583 (7th Cir. 2012)................................................................31

*Am. Humanist Ass'n v. Douglas Cty. Sch. Dist. Re-1*,
  859 F.3d 1243 (10th Cir. 2017)................................................17, 29

*Alfonso v. Fernandez*,
  195 A.D.2d 46, 606 N.Y.S.2d 259 (N.Y. 1993)....................................22

*Anders v. Fort Wayne Cmty. Sch.*,
  124 F. Supp. 2d 618 (N.D. Ind. 2000)........................................8, 28

*Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*,
  576 U.S. 787, 135 S. Ct. 2652, 192 L.Ed.2d 704 (2015)........................21

*Babbitt v. United Farm Workers Nat. Union*,
  442 U.S. 289, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979)........................28

*Beley v. City of Chi.*,
  No. 12-cv-9714, 2013 U.S. Dist. LEXIS 90070 (N.D. Ill. June 27, 2013)................10

*Bensman v. United States Forest Serv.*,
  408 F.3d 945 (7th Cir. 2005)..................................................8

*Brown v. Kemp*,
  506 F. Supp. 3d 649 (W.D. Wis. 2020)....................................27, 28

*Carson v. Makin*,
  142 S. Ct. 1987, 213 L.Ed.2d 286 (2022)........................................34

*Centers v. Centennial Mortg., Inc.*,
  398 F.3d 930 (7th Cir. 2005)..................................................25

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398, 133 S. Ct. 1138, 185 L.Ed.2d 264 (2013)........................passim

*Curtis v. Sch. Comm.*,
  420 Mass. 749, 652 N.E.2d 580 (1995)...........................................................22

*Deanda v. Becerra*,
  No. 2:20-CV-092-Z, 2022 U.S. Dist. LEXIS 222087 (N.D. Tex. Dec. 8, 2022)...........22

*Deida v. City of Milwaukee*,
  192 F. Supp. 2d 899  (E.D. Wis. 2002).......................................................28

*Doe 1 v. Madison Metro. Sch. Dist.*,
  2022 WI 65, 403 Wis. 2d 369, 976 N.W.2d 584..............................................23

*Dolan v. City of Tigard*,
  512 U.S. 374, 114 S. Ct. 2309, 129 L.Ed.2d 304 (1994)......................................33

*Eklecco Newco LLC v. Town of Clarkstown*,
  No. 16-CV-6492 (NSR),
  2019 U.S. Dist. LEXIS 85487 (S.D.N.Y. May 21, 2019)........................................33

*Ervins v. Sun Prairie Area Sch. Dist.*,
  609 F. Supp. 3d 709 (W.D. Wis. 2022)..........................................................17

*FEC v. Akins*,
  524 U.S. 11, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998)....................................35, 37

*Freedom From Religion Found., Inc. v. Obama*,
  641 F.3d 803  (7th Cir. 2011)..................................................................17

*G&S Holdings LLC v. Cont'l Cas. Co.*,
  697 F.3d 534 (7th Cir. 2012)....................................................................7

*Golden v. Zwickler*,
  394 U.S. 103, 22 L. Ed. 2d 113, 89 S. Ct. 956 (1969).........................................28

*Gruenke v. Seip*,
  225 F.3d 290 (3d Cir. 2000).....................................................................24

*Herbert v. Reinstein*,
  976 F. Supp. 331 (E.D. Pa. 1997)............................................................37, 38

*Jablo v. Drake Beam Morin, Inc.*,
  No. 94 C 7344, 1996 U.S. Dist. LEXIS 3875 (N.D. Ill. Mar. 28, 1996)......................2

*Jackson v. City and County of San Francisco,*
  746 F.3d 953 (9th Cir. 2014)..............................................................24

*Knetsch v. United States,*
  364 U.S. 361, 81 S. Ct. 132, 5 L. Ed. 2d 128 (1960).............................33

*Lafferty v. Sch. Bd. of Fairfax Cty.,*
  293 Va. 354, 798 S.E.2d 164 (2017)...................................................16

*Larkin v. Fin. Sys. of Green Bay, Inc.,*
  982 F.3d 1060 (7th Cir. 2020)............................................................10

*Locke v. Haessig,*
  788 F.3d 662 (7th Cir. 2015)...............................................................8

*Los Angeles v. Lyons,*
  461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)........................10

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)................10, 29

*Marsh v. Sch. Bd.,*
  No. 03-4202-JLF, 2006 U.S. Dist. LEXIS 59552 (S.D. Ill. Aug. 23, 2006)..............18

*Massey v. Merrill Lynch & Co., Inc.,*
  464 F.3d 642 (7th Cir. 2006)..............................................................25

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118, 127 S. Ct. 764, 166 L.Ed.2d 604 (2007).....................31, 32

*M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.,*
  845 F.3d 313 (7th Cir. 2017)..............................................................35

*Milwaukee Police Ass'n v. Flynn,*
  863 F.3d 636 (7th Cir. 2017)...............................................................9

*Moss v. Spartanburg Cty. Sch. Dist. Seven,*
  683 F.3d 599 (4th Cir. 2012)..............................................................18

*Newkirk v. E. Lansing Pub. Sch.,*
  File No. 1:91:CV:563,
  1993 U.S. Dist. LEXIS 13194 (W.D. Mich. Aug. 16, 1993).....................38

*Palmer v. Chicago,*
  755 F.2d 560 (7th Cir. 1985)..........................................................................12

*Parents Defending Educ. v. Linn-Mar Cmty. Sch. Dist.,*
  No. 22-CV-78 CJW-MAR,
  2022 U.S. Dist. LEXIS 169459 (N.D. Iowa Sep. 20, 2022)......................14, 15, 30

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1,*
  551 U.S. 701, 127 S. Ct. 2738, 168 L.Ed.2d 508 (2007).......................................17

*Parents Protecting Our Child, UA v. Eau Claire Area Sch. Dist.,*
  No. 22-cv-508-slc, 2023 U.S. Dist. LEXIS 28836 (W.D. Wis. Feb. 21, 2023)....passim

*Parents United for Better Sch., Inc. v. Sch. Dist. of Philadelphia Bd. of Educ.,*
  166 Pa. Cmwlth. 462, 646 A.2d 689 (1994).........................................................23

*Pearson v. Garrett-Evangelical Theological Seminary, Inc.,*
  790 F. Supp. 2d 759 (N.D. Ill. 2011)....................................................................8

*Pennell v. Glob. Tr. Mgmt. LLC,*
  990 F.3d 1041 (7th Cir. 2021)............................................................................11

*Perry v. Sindermann,*
  408 U.S. 593, 92 S. Ct. 2694, 33 L.Ed.2d 570 (1972)..........................................34

*Persinger v. Sw. Credit Sys., L.P.,*
  20 F.4th 1184 (7th Cir. 2021).............................................................................10

*Pierner-Lytge v. Hobbs,*
  60 F.4th 1039 (7th Cir. 2023)........................................................................4, 35

*Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati,*
  822 F.2d 1390 (6th Cir. 1987)...........................................................................31

*Poe v. Ullman,*
  367 U.S. 497, 6 L. Ed. 2d 989, 81 S. Ct. 1752 (1961)..........................................28

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC,*
  2 F.4th 1002 (7th Cir. 2021)...............................................................................7

*Raines v. Byrd,*
  521 U.S. 811, 117 S. Ct. 2312, 138 L.Ed.2d 849 (1997).......................................16

*Remijas v. Neiman Marcus Grp., LLC,*
 794 F.3d 688 (7th Cir. 2015)..................................................................27, 32

*Retired Chicago Police Ass'n v. City of Chicago,*
 76 F.3d 856 (7th Cir. 1996)...............................................................................7

*Reynolds v. Talberg,*
 No. 1:18-cv-69, 2020 U.S. Dist. LEXIS 202418 (W.D. Mich. Oct. 30, 2020)............19

*Ricard v. USD 475 Geary Cty.,*
 No. 5:22-cv-04015-HLT-GEB,
 2022 U.S. Dist. LEXIS 83742 (D. Kan. May 9, 2022)........................................22

*Richards v. United States Steel,*
 869 F.3d 557 (7th Cir. 2017)............................................................................8

*Sanders v. John Nuveen & Co.,*
 554 F.2d 790 (7th Cir. 1977).........................................................................33

*Schanou v. Lancaster Cty. Sch. Dist. No. 160,*
 62 F.3d 1040 (8th Cir. 1995)....................................................................16, 18

*Southworth v. Bd. of Regents of the Univ. of Wis. Sys.,*
 307 F.3d 566 (7th Cir. 2002).........................................................................10

*Spokeo, Inc. v. Robins,*
 578 U.S. 330, 136 S. Ct. 1540, 194 L.Ed.2d 635 (2016).....................................11

*Students & Parents for Privacy v. Sch. Dirs. of Twp. High Sch. Dist. 211,*
 377 F. Supp. 3d 891 (N.D. Ill. 2019)................................................................18

*Susan B. Anthony List v. Driehaus,*
 573 U.S. 149, 134 S. Ct. 2334, 189 L.Ed.2d 246 (2014)................................27, 28

*Tatel v. Mt. Lebanon Sch. Dist.,*
 No. 22-837, 2022 U.S. Dist. LEXIS 196081 (W.D. Pa. Oct. 27, 2022)....................24

*The Cornucopia Inst. v. United States Dep't of Agric.,*
 260 F. Supp. 3d 1061 (W.D. Wis. 2017)...........................................................15

*TransUnion LLC v. Ramirez,*
 141 S. Ct. 2190, 210 L.Ed.2d 568 (2021)....................................................19, 27

*United African Org. v. Biden,*
  No. 1:22-CV-02599, 2022 U.S. Dist. LEXIS 141449 (N.D. Ill. Aug. 9, 2022)............9

*Va. House of Delegates v. Bethune-Hill,*
  139 S. Ct. 1945, 204 L. Ed. 2d 305 (2019)...........................................8, 9

*Wadsworth v. Kross, Lieberman & Stone, Inc.,*
  12 F.4th 665 (7th Cir. 2021)...........................................................10

*Warth v. Seldin,*
  422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)...........................9

*Younger v. Harris,*
  401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971)............................28

## Statutes

28 U.S.C. § 1291.................................................................................1

28 U.S.C. § 1331.................................................................................1

28 U.S.C. §1343..................................................................................1

28 U.S.C. § 1367.................................................................................1

42 U.S.C. § 1983.............................................................................1, 35

20 U.S.C. § 1232h.............................................................1, 6, 35, 36, 37

34 C.F.R. § 98.4............................................................................37, 38

## Other Authorities

Article I, § 1, Wisconsin Constitution.....................................................1

Article I, § 18, Wisconsin Constitution...................................................1

Fed. R. Civ. P 12(b)(1).....................................................................5, 7

Fed. R. Civ. P. 12(b)(6)....................................................................5, 7

## JURISDICTIONAL STATEMENT

The jurisdictional summary in the Plaintiff-Appellant, Parents Protecting Our Children, UA's ("Plaintiff") brief is incomplete and incorrect. Plaintiff filed this case on September 7, 2022. (R.1); SA 1-26. The case was assigned to Magistrate Judge Stephen L. Crocker, and all parties consented to proceed before the Magistrate: Plaintiff on September 19, 2022 (R.13-1), and Defendant, Eau Claire Area School District[1] (the "District"), on November 15, 2022 (R.13-2). The District Court issued an order referring the case to the Magistrate on November 18, 2022. (R.13).

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because the claims arise under the Fourteenth and First Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983 and 20 U.S.C. § 1232h. The District Court also had supplemental jurisdiction under 28 U.S.C. § 1367 of Plaintiff's state law claims under Article I, §§ 1 and 18 of the Wisconsin Constitution.

Plaintiff's appeal is taken from the order and final judgment[2] of the United States District Court for the Western District of Wisconsin entered on February 22, 2023, issued by the Honorable Stephen L. Crocker, Magistrate Judge (Case No. 3:22-cv-508), *Parents Protecting Our Child, UA v. Eau Claire Area Sch. Dist.*, No. 22-cv-508-slc, 2023 U.S. Dist. LEXIS 28836 (W.D. Wis. Feb. 21, 2023) (R.20; R.21); RSA 1-20, 21. This Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 1291.

---

[1] Plaintiff also named the members of the District Board of Education as defendants in their official capacities: Tim Nordin, Lori Bica, Marquell Johnson, Phil Lyons, Joshua Clements, Stephanie Farrar, and Erica Zerr. Plaintiff also named District Superintendent Michael Johnson in his official capacity.

[2] Dismissal without prejudice for lack of subject matter jurisdiction is a final judgment for purposes of appeal. *Bovee v. Broom*, 732 F.3d 743, 743 (7th Cir. 2013).

The Notice of Appeal was filed with the District Court on March 21, 2023.  (R.22); SA41-42.

## STATEMENT OF THE ISSUES

1.     Whether Plaintiff has standing given that none of its individual members have suffered an injury in fact that is traceable to the challenged conduct of the District.

## STATEMENT OF THE CASE

## I.     NATURE OF THE CASE.

Plaintiff is an unincorporated association of parents whose children attend schools within the Eau Claire Area School District.  (R.1, ¶ 6); SA3.  Plaintiff objects to the District's use of its internal, administrative guidance for staff that explains how to provide support to students who express concern about gender issues (the "Guidance").[3]  *See* (R.1-3, R.1-4); SA27-36.

The purpose of the Guidance is to "foster inclusive and welcoming environments that are free from discrimination, harassment and bullying regardless of [one's] sex, sexual orientation, gender identity or gender expression."  (R.1-3); SA27.  The Guidance contemplates the development of a Gender Support Plan to meet these students' "educational needs and ensuring that the student has access and opportunity to participate in the District's educational programs and activities."  (R.1-

---

[3] Throughout these proceedings the parties have referred to the administrative guidance document as "the Guidance" or "the Policy."  Amici Curiae label the Guidance as the "Parental Preclusion Policy", a self-serving mischaracterization of the Guidance.  Such hyperbole does little to assist the Court.  *Jablo v. Drake Beam Morin, Inc.*, No. 94 C 7344, 1996 U.S. Dist. LEXIS 3875, at *2 n.1 (N.D. Ill. Mar. 28, 1996).

3); SA28. All Gender Support Plans are to be maintained in the student's cumulative file. (R.1-3); SA29. This fact is important because even if a student does not want their parents to know about their gender identity issues or the existence of the Gender Support Plan, they are specifically advised that the Gender Support Plan is a student record that is always available to their parents and that it is "not a privileged document between the student and the school district." (R.1-4); SA33.

Critical to this appeal is the fact that Plaintiff has admitted that its members and their children have not been directly affected by the Guidance or had a Gender Support Plan developed. *See* RSA10. Plaintiff's members' children have not been diagnosed with gender dysphoria, are not gender nonconforming, have not expressed gender identity issues, and have not contacted anyone in the District to address the need for gender support. *Id.* As such, the Guidance has never been utilized with any of Plaintiff's members' children.

Despite this lack of injury, Plaintiff claims that at some unknown point in the future one of its members' children might be transgender, and if so, they might request gender support from the District, and then, further, they might also request that the District not immediately notify their parent of these facts. Plaintiff's claim of possible future harm is completely dependent upon this highly attenuated chain of future possibilities that may never occur.

The District moved to dismiss the Complaint on the basis that Plaintiff lacked standing. (R.11). The District Court reviewed the Complaint under the motion to dismiss standard and determined that the well-plead allegations in the Complaint

and the exhibits attached thereto failed to show that Plaintiff had standing.  (R.20);
RSA1, 7, 20

In this appeal, Plaintiff challenges the District Court's conclusion that it failed
to demonstrate standing.  Despite this limited issue, Plaintiff focuses on the merits
of its claims instead of on the issue of standing.  Plaintiff's efforts do little to further
its appeal because one cannot ignore that Plaintiff's members have not suffered any
actual harm and the remote possibility that they might suffer harm in the future is
far too dependent upon a highly attenuated chain of possibilities that may never
occur.  The District Court properly dismissed Plaintiff's Complaint for lack of
standing, and the dismissal should be affirmed.

## II.   COURSE OF PROCEEDINGS AND DISPOSITION BELOW.

Plaintiff filed this lawsuit against the District on September 7, 2022.  (R.1).
Plaintiff claimed that the mere existence of the Guidance violates its members'
substantive due process right which they vaguely label as a right to direct and control
the upbringing of their children.  (R.1, ¶¶ 77-88); SA 16-18.  Plaintiff also raised an
amorphous claim that the Guidance violates its members' right to freely exercise[4]
their religion.[5]  (R.1, ¶¶ 89-99); SA18-20.  Lastly, Plaintiff alleged that the Guidance
somehow violates the Protection of Pupil Rights Amendment ("PPRA").  (R.1, ¶¶ 118-

---

[4] Plaintiff does not mention the Free Exercise clause on appeal and does not argue that it
somehow creates an injury for purposes of its standing analysis.  Any such claim is therefore
waived on appeal.  *See Pierner-Lytge v. Hobbs*, 60 F.4th 1039, 1043 n.1 (7th Cir. 2023) (failing
to advance an argument on appeal amounts to waiver).
[5] Plaintiff also claims the Guidance violates the parallel portions of the Wisconsin
Constitution.  (R.1, ¶¶ 100-117); SA20-23.

125); SA23-24.  Plaintiff requested declaratory and injunctive relief to prevent the Guidance from being used or implemented in any way.  (R.1, p. 25); SA25.

The District filed a motion to dismiss under Fed. R. Civ. P 12(b)(1) for lack of standing and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  (R.11).  After the motion was fully briefed, the District Court granted the District's motion to dismiss for lack of standing on February 21, 2023, and did not reach the merits of whether the Complaint stated a claim of relief.  RSA1, 7, 20.  Judgement was entered on February 22, 2023.  (R.21); RSA21.  The District Court found that Plaintiff lacked standing, explaining that "Plaintiff's entire standing argument is premised on a speculative chain of possibilities, including future choices made by individuals who have not yet been identified, indeed who *cannot* yet be identified because they have *not* acted, and they might *never* act. This will not suffice."  RSA12-13 (emphasis in original).  The District Court rejected all of Plaintiff's arguments that it showed a possible injury.  RSA14.

Plaintiff filed a notice of appeal with the District Court on March 21, 2023.  (R.22); SA41-42.

## SUMMARY OF ARGUMENT

Plaintiff failed to demonstrate that there is a justiciable controversy.  Plaintiff claims to have associational standing but none of Plaintiff's members have standing in their own right because none have suffered an injury in fact.  Plaintiff presents a multitude of arguments as to why it believes its members have been harmed, but none are viable.

Plaintiff has not alleged facts that plausibly suggest that its members have been directly impacted by the Guidance or that the Guidance has even affected their parental decision-making authority. Specifically, Plaintiff's members' children have not been diagnosed with gender dysphoria, are not gender nonconforming, have not expressed gender identity issues, and have not contacted anyone in the District to address the need for gender support. Not a single member of Plaintiff's organization has sustained an injury in fact. Rather, their claimed injury is premised upon a highly attenuated chain of future possibilities that may never occur.

Simply being a parent who lives in the District does not confer standing that would allow any of Plaintiff's members to challenge school policies. The Guidance does not create systemic harm with an eventuality that Plaintiff's members' children will be come into direct contact with the Guidance or a Gender Support Plan.

Likewise, the claim that Plaintiff's members have "informational standing" fails because there is no credible claim that Plaintiff's members were denied any information to which they were statutorily entitled or prevented from exercising any rights. Plaintiff also claims that the PPRA, 20 U.S.C. § 1232h, creates a right to information and that the existence of the Guidance denies them information. This argument also fails to establish standing. Plaintiff did not plead any facts to plausibly suggest that the Guidance implicates any rights or denies its members any information under the PRRA.

Next, Plaintiff cannot establish standing by claiming that this suit is a pre-enforcement challenge to the Guidance. The alleged future harm is not imminent

and substantial.  There are also no allegations that the Guidance will be utilized to arrest, prosecute, or otherwise be enforced against Plaintiff's members.  Simply disagreeing with a policy is insufficient to create standing to bring a pre-enforcement challenge.

Lastly, the unconstitutional condition doctrine is inapplicable and does not create standing.  None of Plaintiff's members have been subjected to any retaliation for their opposition to the Guidance, and the Guidance does not hinder the Plaintiff's members' right to send their children to public school.  While Plaintiff has abandoned this argument on appeal, Amici Curiae has raised this argument in their brief.  An issue abandoned by an appellant should not be reviewed, but even if this issue is considered, it is off base.

## ARGUMENT

## I.   STANDARD OF REVIEW.

This Court reviews a Fed. R. Civ. P. 12(b)(1) dismissal under the *de novo* standard.  *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 539 (7th Cir. 2012).  A party may move to dismiss an action for lack of a justiciable controversy (including standing) under Federal Rule of Civil Procedure 12(b)(1).  *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996).  At the pleading stage, courts will review justiciability based on the well-plead allegations in the complaint under the Fed. R. 12(b)(6) standard.  *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007-08 (7th Cir. 2021).  However, a court ruling on a motion to dismiss under Rule 12(b)(1) may rely upon affidavits and other materials

supporting its motion. *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 762 (N.D. Ill. 2011). The plaintiff carries the burden of establishing standing. *Id.*

There may be more than one basis to affirm a motion to dismiss and this Court "can affirm on any ground supported by the record so long as the issue was raised and the non-moving party had a fair opportunity to contest the issue in the district court." *Richards v. United States Steel*, 869 F.3d 557, 562 (7th Cir. 2017) (citing *Locke v. Haessig*, 788 F.3d 662, 666 (7th Cir. 2015)).

## II. PLAINTIFF CANNOT ESTABLISH ASSOCIATIONAL STANDING BECAUSE NONE OF ITS MEMBERS HAVE SUSTAINED AN INJURY IN FACT.

To proceed in this case, Plaintiff, like all other plaintiffs, was required to show that it had standing to sue: "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Bensman v. United States Forest Serv.*, 408 F.3d 945, 949 (7th Cir. 2005).[6] Standing is a jurisdictional requirement, and it cannot be waived or forfeited. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951, 204 L. Ed. 2d 305, 312 (2019). "And when standing is questioned by a court or an opposing party, the litigant invoking the court's jurisdiction must do more than simply allege a nonobvious harm. To cross the standing threshold, the litigant must

---

[6] Another justiciability doctrine, ripeness "is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Anders v. Fort Wayne Cmty. Sch.*, 124 F. Supp. 2d 618, 630 (N.D. Ind. 2000). This is because ripeness becomes an issue when "a case is anchored in future events that may not occur as anticipated, or occur at all." *Id.* "The doctrine of ripeness is closely related to standing in cases involving a pre-enforcement challenge; the two concepts often collapse into one issue." *Id.*

explain how the elements essential to standing are met." *Id.* (internal citations omitted).

> **A.**     **Because Plaintiff Has Not Been Injured, It Is Forced To Rely Upon A Claim Of Associational Standing, A Standard It Cannot Meet.**

Plaintiff is an unincorporated nonprofit association. Its members consist of residents of the District who have children that attend school in the District. (R.1, ¶ 6); SA3.

An organization may sue on behalf of its members if "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United African Org. v. Biden*, No. 1:22-CV-02599, 2022 U.S. Dist. LEXIS 141449, at *14-15 (N.D. Ill. Aug. 9, 2022) (citing *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017)).[7] Of these three requirements, the only issue in this appeal is whether any of Plaintiff's members have standing in their own right.[8] And,

---

[7] Plaintiff acknowledges that the only issue before the Court is standing, and that "the merits are not before this Court." (App. R.13, p. 3). Despite this acknowledgement, Plaintiff devotes the next thirteen pages of its brief to addressing the merits, but that discussion has no impact on the standing analysis. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (stating that standing "often turns on the nature and source of the claim asserted," but it "in no way depends on the merits" of claim). The District does not address the merits because they are not at issue, but this should not be construed as a concession that Plaintiff's arguments are correct.

[8] A review of the Complaint shows that Plaintiff seeks to protect interests germane to its stated purpose and that individual member participation may not be required. Thus, the basis for dismissal of the Complaint centered on the lack of standing of individual members and their lack of an injury in fact.

as explained below, Plaintiff has failed to allege any facts that plausibly suggest that one if its members have suffered an injury in fact.

### B.    Nothing In The Complaint Plausibly Suggests That Any Of Plaintiff's Members Have Suffered An Injury In Fact.

To establish that a member has individual standing, Plaintiff must show that a member "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021) (internal citation omitted).[9]

An injury in fact is "defined as an invasion of a legally protected interest which is . . . concrete and particularized and actual or imminent." *Southworth v. Bd. of Regents of the Univ. of Wis. Sys.*, 307 F.3d 566, 573 (7th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)). Correspondingly, to establish an injury in fact sufficient to receive the kind of injunctive or declaratory relief sought by Plaintiff "a party must show a real and immediate threat of injury." *Beley v. City of Chi.*, No. 12-cv-9714, 2013 U.S. Dist. LEXIS 90070, at *8 (N.D. Ill. June 27, 2013) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)). This requirement "means the injury must be both concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021).

---

[9] "At the pleading stage, the standing inquiry asks whether the complaint clearly . . . allege[s] facts demonstrating each element in the doctrinal test." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (internal citations omitted).

Considering this standard, when reviewing potential injuries for standing purposes, courts are constrained by the well-plead allegations in the complaint. *See Pennell v. Glob. Tr. Mgmt. LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021). Therefore, the well-plead allegations in the complaint must show the existence of a concrete *de facto* injury, meaning that it must actually exist. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540, 194 L.Ed.2d 635 (2016). And "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* at 339.

Plaintiff's Complaint is devoid of any facts that plausibly suggest that any of its members suffered an injury in fact. That is, nothing in Plaintiff's Complaint plausibly suggests that any of its members can meet this requirement by showing that they suffered an injury that is concrete and particularized and actual or imminent. Plaintiff's claims of such an injury are premised upon fundamental mischaracterizations of the law.

### 1.    A possible future event that will arise only if a speculative chain of possibilities occurs is not a concrete injury for purposes of standing.

For purposes of standing, the claimed injury cannot be speculative. The "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 1147, 185 L.Ed.2d 264, 276 (2013) (internal citations omitted) (emphasis in original). "Allegations of *possible* future injury are not sufficient." *Id.* (emphasis in original). This principle is important because Plaintiff has not plead any facts that plausibly suggest that its

members have been impacted by the Guidance and instead relies upon speculative future harm.

The Supreme Court made it clear in *Clapper* that an injury in fact cannot be based on "a highly attenuated chain of possibilities." *Id.* at 410. In other words, an injury cannot be found to be "certainly impending" if it requires multiple contingencies to occur in the future. *See id.* (explaining that five events needed to occur in the way predicted by the plaintiffs for them to sustain their alleged injury from the government's application of the Foreign Intelligence Surveillance Act of 1978). "[A] plaintiff's standing must be premised upon more than hypothetical speculation and conjecture that harm will occur in the future." *Palmer v. Chicago*, 755 F.2d 560, 571 (7th Cir. 1985).

Plaintiff's entire standing argument is premised upon a speculative chain of future possibilities. What Plaintiff claims as its members' injury is simply its belief that at some point in the future the Guidance might interfere with one of its members' abilities to direct the upbringing of their children. But this claim is merely premised on a highly attenuated chain of possibilities.

Plaintiff does not allege in the Complaint that any of its members' children are transgender, gender nonconforming, suffering from gender dysphoria, or that they sought out gender support. *See* RSA10 ("[P]laintiff does not allege . . . that any of its members' children are transgender or gender nonconforming."). Plaintiff also does not allege that the District has applied the Guidance to any of its members' children or any other children. *See id.* ("[P]laintiff does not allege . . . that the district has

applied the gender identity support Guidance or Plan with respect to its members's children or any other children."). Plaintiff also fails to allege that any of its members has been denied information related to their child's gender identity. *See id.* ("[P]laintiff does not allege . . . that any parent or guardian has been denied information related to their child's identity."). Without such allegations, there is a total absence of facts to plausibly suggest that any of Plaintiff's members have sustained an injury in fact.

Plaintiff's argument on appeal is premised on its speculation about the future. Plaintiff claims that the Guidance <u>might</u> interfere with one of its members' rights <u>if</u> it were ever applied to them. This claim, however, is premised upon a highly attenuated chain of future possibilities. For one of Plaintiff's members to actually sustain the injury it claims, one of its members' children must: (1) develop a belief that they have a gender identity that differs from their biological sex; (2) affirmatively approach a District employee and request gender support; (3) participate in the development of a Gender Support Plan (R.1-4); and (4) request that the District not advise their parents about Gender Support Plan. Additionally, as part of that chain of possibilities, (5) the school must never discuss the Gender Support Plan with the parent and (6) the parent must never request to see the student's educational records.[10] Thus, for Plaintiff's members' claimed injury to occur, multiple future contingencies must take place, including future choices made by individuals who have

---

[10] Plaintiff and the Amici Curiae simply ignore that the District specifically recognizes that a Gender Support Plan it is a student record, must be kept in the student's cumulative file, and is <u>always</u> accessible to a parent. *See* (R.1-4); SA33. The claim that there is a mechanism to keep a Gender Support Plan hidden from parents is pure fiction.

never indicated that they have gender identity issues.  Those individuals cannot even be identified because they have not acted and may never act.

Courts have explained that reliance on an injury that is premised upon a speculative chain of future possibilities, like the one Plaintiff relies upon, precludes a plaintiff from establishing standing.  For example, in *Parents Defending Educ. v. Linn-Mar Cmty. Sch. Dist.*, No. 22-CV-78 CJW-MAR, 2022 U.S. Dist. LEXIS 169459 (N.D. Iowa Sep. 20, 2022), the court found that a parent organization lacked standing to challenge a school district's gender support policy.  That policy provided that: "All persons, including students, have a right to privacy which includes the right to keep one's transgender status private at school" and that "[t]ransgender and gender nonconforming students have the right to discuss and express their gender identity and expression openly and to decide when, with whom, and how much to share private information . . . School staff should always check with the student first before contacting their parent/guardian."  *Id.* at *8-9, 26.  In finding that the parent organization did not have standing, the court relied on *Clapper's* holding that an injury in fact cannot be established by a speculative chain of events that may never occur.  *Id.* at *27-28.  The court explained:

> Additionally, plaintiff asserts a conjectural possibility of injury via a Gender Support Plan being created for the children without parental knowledge or consent. They predict the school and/or their children will not involve the parents in the creation of or discussions about a Gender Support Plan and that the school will not be forthcoming about Gender Support Plans when parents ask in violation of their fundamental rights of child-rearing. Based on the record currently before the Court, no one has been denied information related to their child's gender identity or Gender Support Plan. Though the Court does not doubt their genuine fears, **the facts currently alleged before the Court do not sufficiently show**

> **the parents or their children have been injured or that they face certainly impending injury through enforcement of the Policy**. The theory that (1) their child will express a desire for or indicate by mistake a desire for a plan, (2) the child will be given a plan, (3) without parental consent or knowledge, (4) and the information will be hidden or denied when parents ask **requires too many speculative assumptions without sufficient factual allegations to support a finding of injury**. *See Turkish Coal.*, 678 F.3d at 622.

*Id.* at *28-29 (emphasis added).

Here, just like in *Linn-Mar Cmty. Sch. Dist.*, for the alleged harm to its member to materialize, Plaintiff must rely on facts that may never occur. Plaintiff's members' children may never develop gender identity issues. They may never approach a District employee to request gender support. They may never request that their parents not be notified of, or made a part of the development of, a Gender Support Plan. District officials may decline the student's request that they not discuss the Gender Support Plan with the parent. The parent may also review the student's educational records, as is their right, and receive a copy of the Gender Support Plan.[11] Because these events may never occur, they are merely speculative, discretionary acts that do not amount to a concrete injury and cannot justify a finding of standing. *Id.*; s*ee also The Cornucopia Inst. v. United States Dep't of Agric.*, 260

---

[11] Plaintiff makes a cursory argument that requiring parents to periodically review their child's records is a concrete harm. (App. R.13, p. 40). This too is hypothetical and speculative, not a concrete and particularized harm that would constitute an injury in fact. Accepting this argument requires speculation that a hypothetical parent would have no indication or knowledge that their child had gender identity issues. It is speculative to assume that a parent would be completely oblivious to these issues. Even if the parent was unaware, they could periodically review their child's student records as a matter of right by simply calling or emailing the District and making such a request pursuant to Wis. Stat. § 118.125(2)(a), (b) or the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g. This is not a concrete and particularized harm caused by the Guidance.

F. Supp. 3d 1061, 1069 (W.D. Wis. 2017) ("Like *Clapper*, plaintiffs' chain of causation here is further weakened by its reliance on third parties' discretionary acts.").

### 2. One's status as a parent of a student does not confer standing to challenge a policy if the parent has not been impacted by the policy.

Parents cannot bring a claim against a school district simply because they disagree with a policy. The Supreme Court has consistently stressed that a plaintiff's complaint "must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819, 117 S. Ct. 2312, 2317, 138 L.Ed.2d 849, 858 (1997).

Moreover, generalized uncomfortableness with a policy that has never directly impacted a person is not enough to confer standing upon them because there is nothing that "supports the proposition that parents have standing to [challenge] . . . the maintenance of an allegedly unconstitutional school policy in the absence of any allegations that the policy directly affects or threatens to directly affect any of the parent's children." *Schanou v. Lancaster Cty. Sch. Dist. No. 160*, 62 F.3d 1040, 1044 (8th Cir. 1995); *see also Lafferty v. Sch. Bd. of Fairfax Cty.*, 293 Va. 354, 361-62, 798 S.E.2d 164, 168 (2017) (holding that general "distress" in the educational environment over fear of future application of a policy allowing transgender students to use the bathroom consistent with their gender identity is not an injury in fact because "general distress over a general policy does not alone allege injury sufficient for standing, even in a declaratory judgment action").

Plaintiff fails to recognize that it merely disagreeing with a policy does not confer standing on its members. *See Ervins v. Sun Prairie Area Sch. Dist.*, 609 F. Supp. 3d 709, 721 (W.D. Wis. 2022) (citing *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 807-08 (7th Cir. 2011)) (explaining that "frustration and disagreement with government action does not constitute an injury for purposes of standing"). Standing to challenge a school's policy is simply not conferred on a parent by their child's attendance at the school. *See Am. Humanist Ass'n v. Douglas Cty. Sch. Dist. Re-1*, 859 F.3d 1243, 1255-56 (10th Cir. 2017) (denying claim that parent had standing when his child had no direct contact with the challenged practice).

Plaintiff claims that *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 127 S. Ct. 2738, 168 L.Ed.2d 508 (2007), stands for the proposition that merely having children enrolled in the District is enough to confer standing, but that case was clearly postured differently than this case. *Parents Involved* addressed a policy of using a student's race to assign which school they would attend. It was undisputed that plaintiff's members' children had not yet been prevented from choosing their preferred school because of their race, but the Supreme Court found that harm was not speculative because by virtue of being enrolled in the school district, every student would eventually be "forced to compete in a race-based system that may prejudice the plaintiff." *Id.* at 719. The injury was systemic and was bound to occur as students matriculated from elementary school to middle school or middle school to high school. *Id.* Here, the alleged injury is not systemic and there is no eventuality that any of Plaintiff's members' children will ever have needs that are

17

addressed by the Guidance.  Plaintiff's broad reading of *Parents Involved* is incorrect and does not confer generalized parental standing.

### 3. Plaintiff's "transfer of decision-making authority" theory mischaracterizes the Guidance and fails to acknowledge that its members have not been impacted by the Guidance.

Parents can disagree with a school's policies, but simply disagreeing with a policy does not confer standing on a parent to challenge that policy.  To challenge the constitutionality of a school policy, a plaintiff must show that they were personally injured in some way by the policy.  *Moss v. Spartanburg Cty. Sch. Dist. Seven*, 683 F.3d 599, 605 (4th Cir. 2012) (holding that parents of children attending a school cannot challenge the "constitutionality of school policies without demonstrating that they were personally injured in some way by those policies.").

Standing requires an injury to the parent particularly or to the parent's children particularly, not simply a threatened injury.  *See Students & Parents for Privacy v. Sch. Dirs. of Twp. High Sch. Dist. 211*, 377 F. Supp. 3d 891, 899 (N.D. Ill. 2019) ("The first amended complaint, however, includes no allegations of an injury to Victoria Wilson particularly or to her children particularly.  Accordingly, the Court agrees with District 211 that plaintiffs have not adequately alleged that plaintiff Victoria Wilson has standing.").  Parents only have standing to challenge a school's alleged unconstitutional practice if it directly affects them or their children.  *Schanou*, 62 F.3d at 1045; *see also Marsh v. Sch. Bd.*, No. 03-4202-JLF, 2006 U.S. Dist. LEXIS 59552, at *28 (S.D. Ill. Aug. 23, 2006) ("Parents may only obtain redress for wrongdoings which directly affect them or their children."),

In cases like this where the challenged policy has never been applied in the way the parents find objectionable, parents cannot demonstrate "that there is a substantial risk" that the policy or practice will be enforced in the way that they foresee. *Reynolds v. Talberg*, No. 1:18-cv-69, 2020 U.S. Dist. LEXIS 202418, at *11 (W.D. Mich. Oct. 30, 2020) ("The Challenged Policies have never been applied to Plaintiffs in the ways that Plaintiffs allege the policies will be applied."). Plaintiff's Complaint does not identify facts to plausibly suggest that there is a substantial risk that the Guidance will ever be applied to its members' children in the way they foresee. There are no allegations in the Complaint that any of Plaintiff's members' children have been diagnosed with gender dysphoria, are gender nonconforming, expressed gender identity issues, or have contacted anyone in the District to address the need for gender support.

None of the cases cited by Plaintiff stand for the proposition that one can have standing based upon a fear of future harm. All the cases cited by Plaintiff are founded on *Clapper's* requirement that a material risk of future harm may only confer standing if the harm is sufficiently imminent and substantial. *See, e.g., TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210, 210 L.Ed.2d 568, 590-91 (2021). Plaintiff largely ignores this, but an honest analysis of these cases does not support Plaintiff's claim of a present injury to its members.

a. <u>Plaintiff's claim that the Guidance transfers decision-making authority is unfounded.</u>

Plaintiff argues that the mere existence of the Guidance infringes on its members' alleged constitutional right to control the upbringing of their children. *See*

19

(R.1, ¶ 74); SA16.  Plaintiff argues that the Guidance somehow transfers parental decision-making authority to the District, and that this harms its members. Plaintiff's claim, however, relies on a complete misrepresentation of the Guidance.

As pointed out by the District Court, a fair reading of the Guidance shows that it does "not *mandate* the exclusion of parents and guardians."  RSA9 (emphasis in original).  The Guidance explicitly encourages family involvement in developing a Gender Support Plan.  RSA10 (citing (R.1-4)).  While the Guidance anticipates that some students may not be open about their gender issues at home, it does not promote the exclusion of parents and only instructs school personnel to speak with the student first before discussing it with the student's parent/guardian.  (R.1-3); SA28.

The Guidance does not instruct secrecy and it explicitly advises students that their name will not be changed in the District's system without parent/guardian permission.  RSA10.  The Gender Support Plan specifically provides that if a student states that they do not want their parents to know about the plan, that it must be made clear to the student that the plan will be released to the parents and the plan is not a privileged document between the student and the school.  (R.1-4); SA33. Plaintiff's "transfer of decision-making authority" theory is not viable.  The Guidance's does not transfer decision-making authority by purposely excluding parents.

       **b.**      <u>Plaintiff's reliance on a string of future contingencies to create its claimed "transfer of decision-making authority" does not create a concrete and particularized impact on Plaintiff's members.</u>

Plaintiff cites several cases that it claims supports its "transfer of decision-making authority" theory, but it fails to recognize that those cases involved concrete, current injuries, not a string of future contingencies like Plaintiff relies on here.

Plaintiff's reliance on *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 135 S. Ct. 2652, 192 L.Ed.2d 704 (2015) is unavailing. In *Ariz. State Legis.,* the Supreme Court found that the Arizona Legislature had standing to challenge Arizona Proposition 106, which amended the Arizona Constitution to remove redistricting authority from the Legislature and vest it in the Arizona Independent Redistricting Commission (AIRC). *Id.* at 792-93.

The Court considered whether the Arizona Legislature sustained in injury in the form of an "invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Id.* at 799-800. In finding such an injury, the Court explained that Proposition 106 gave the AIRC binding authority over redistricting, regardless of the Legislature's action or inaction and that it presently stripped the Legislature of its prerogative to initiate redistricting. *Id.* at 800. The Court held that Proposition 106, together with the Arizona Constitution's ban on efforts to undermine the purposes of an initiative would "completely nullif[y]" any vote by the Legislature, now or "in the future," purporting to adopt a redistricting plan. *Id.* at 804.

The *Ariz. State Legis Court's* finding of standing was premised on the fact that the change in law was a concrete action that actually stripped authority from the Legislature and those effects had a present impact. Here, Plaintiff simply ignores that the Guidance has no concrete, present impact on Plaintiff's members. Plaintiff's reliance on *Ariz. State Legis.* fails because Plaintiff's alleged harm is dependent on a string of future contingencies that may never occur.

Plaintiff's reliance on various lower court decisions also does not help it establish standing in the absence of a present injury. For example, in *Deanda v. Becerra*, No. 2:20-CV-092-Z, 2022 U.S. Dist. LEXIS 222087, at *8 (N.D. Tex. Dec. 8, 2022) the court found an injury in fact because Texas state law conferred upon parents a right to consent to a child's medical treatment. Because state law created a right to consent and this was directly impacted by the challenged federal statute, the court determined that there had been an injury in fact. *Id.* at *8-9, n.1. *Deanda* did not rely on an attenuated chain of contingencies like Plaintiff does here.[12]

---

[12] Plaintiff mischaracterizes the significance of other decisions. *Ricard v. USD 475 Geary Cty.*, No. 5:22-cv-04015-HLT-GEB, 2022 U.S. Dist. LEXIS 83742 (D. Kan. May 9, 2022) did not "hold" that a parents have a constitutional right to control a child's name or pronouns. In dicta the court stated that a parent may have an opinion and "a say" on the issue. *Id.* at *21. That case concerned whether a policy that prohibited a teacher from using a student's preferred pronoun in parental communications had a reasonable likelihood of infringing on the teacher's free exercise rights as she had alleged a religious belief that prohibited her from being dishonest and did not address parental rights. *Id.* at *12. Additionally, the court recognized that a school may "have a compelling interest in refusing to disclose information about preferred names or pronouns where there is a particularized and substantiated concern that disclosure to a parent could lead to child abuse, neglect, or some other illegal conduct." *Id.* at *21 (emphasis in original). Plaintiff also relies upon *Alfonso v. Fernandez*, 195 A.D.2d 46, 606 N.Y.S.2d 259 (N.Y. 1993), but that state court decision has been rightfully criticized: ". . . we disagree with its reasoning. Moreover, we point out that the decision was based more directly on a State law which required parental consent for medical treatment. The court concluded, erroneously we think, that the distribution of condoms constituted a medical

Plaintiff's cursory reference to *Parents United for Better Sch., Inc. v. Sch. Dist. of Philadelphia Bd. of Educ.*, 166 Pa. Cmwlth. 462, 646 A.2d 689 (1994) is also unavailing. *Parents United,* like *Deanda,* turned upon the existence of a state law right requiring express parental consent to medical treatment. *Id.* at 467. This too created an injury in fact because the court found condom distribution to be a medical procedure under state law. *Id.* at 467-69. Unlike Plaintiff's claims here, *Parents United* did not rely upon an attenuated chain of contingencies.

Finally, Plaintiff's reliance on a dissenting opinion in *Doe 1 v. Madison Metro. Sch. Dist.*, 2022 WI 65, 403 Wis. 2d 369, 976 N.W.2d 584, is completely unavailing. That decision did not address standing and has no application to the issue on this appeal. The *Doe* decision was limited to whether the plaintiffs could proceed anonymously. *Id.* at ¶ 1. The is nothing within the decision that remotely affects the analysis of this case.

### 4. Plaintiff's Claim of "informational standing" is misguided as the Guidance does not prevent Plaintiff's members from receiving any information that they are entitled to.

Plaintiff asserts that its members have sustained an injury in fact because the Guidance "denies Plaintiff's members' access to information about their own children to which they are entitled." (App. R. 13, p. 28). Plaintiff characterizes this as an interference with its members' fundamental constitutional rights. Plaintiff mischaracterizes the scope of any rights at issue in this case and its interference claim

---

service for which parental consent was required." *Curtis v. Sch. Comm.*, 420 Mass. 749, 759, 652 N.E.2d 580, 586 (1995).

fails for that reason. It also fails, however, because the Guidance does not interfere with any rights. Plaintiff offers no support for its claim that the Guidance denies its members information that they need to determine whether to keep their child in public school, and that this denial of information constitutes an injury-in-fact for standing purposes.

Plaintiff's reliance on *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) is entirely misplaced. The cited passage analyzed whether a constitutional claim had been stated, not whether the plaintiff had standing. In addressing standing, the *Jackson* court applied the "'injury in fact' that is 'concrete and particularized' and 'actual or imminent,' not 'conjectural or hypothetical'" requirement. *Id.*

*Gruenke v. Seip*, 225 F.3d 290 (3d Cir. 2000), also has no value on the issue of standing. In *Gruenke*, the Third Circuit[13] recognized the parental rights of a mother whose daughter was forced by her swim team coach to take a pregnancy test and who then spread rumors of the teen's pregnancy at the school without informing her parents. *Id.* at 308-09. There was no question that an alleged injury in fact had taken place and was completed prior to the filing of the lawsuit. Thus, standing was never at issue and this case provides no support for Plaintiff.

Plaintiff's arguments about being denied information are hyperbolic. Plaintiff's members have not been denied information relevant to determining

---

[13] To the extent the Court considers caselaw out of the Third Circuit, it should be noted that that circuit contains a "broader precedent" regarding the scope of parental rights than other circuits. *See Tatel v. Mt. Lebanon Sch. Dist.*, No. 22-837, 2022 U.S. Dist. LEXIS 196081, at *42 (W.D. Pa. Oct. 27, 2022).

whether they will continue to send their children to public school. Nor has the District intentionally hid information from Plaintiff's members that is important to making choices for their children.[14] The Guidance does not direct secrecy. In fact, it explicitly states that: "School personnel should speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent/guardian." (R. 1-3); SA28. It does not direct staff to actively hide anything. The Guidance also recognizes that parents will <u>always</u> have access to a Gender Support Plan: "A copy of the final plan should be maintained in the student's cumulative file," which parents always have access to. (R.1-3); SA29. The Gender Support Plan explicitly states that: "If parents are not involved in creating this plan, and student states they do not want parents to know, it shall be made clear to the student that this plan is a student record and will be released to their parents when they request it. This is a not a privileged document between the student and the school district." (R.1-4); SA33.

Plaintiff's claim that its members are being denied a right to information mischaracterizes the Guidance. Additionally, any such claim about the denial of information or a right to be notified if their child requests gender support is still

---

[14] It should be noted that throughout its brief, Plaintiff makes factual claims about the Guidance, citing to its Complaint rather than the Guidance itself. Although the well-plead facts alleged in a complaint are entitled to the presumption of truth, when a plaintiff attaches documents to the complaint as exhibits, those exhibits control over contrary pleadings. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) (citing *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)). For example, although Plaintiff alleges in the Complaint that the Guidance requires teachers to use "the child's actual name and pronouns when addressing her parents so they will not be alerted to the changes the school has made," there is no such requirement in the Guidance. (R 1-3).

premised on a highly attenuated chain of future possibilities that may never come to fruition.  Multiple contingencies would need to occur to raise the possibility that Plaintiff's members' child is seeking gender support pursuant to the Guidance. Plaintiff's claim that a "lack of information" creates standing fails like its other arguments that are premised on future, possible harm, not a present injury in fact.

> 5. **The existence of the Guidance cannot be found to interfere with the parent-child relationship without proof that it has been applied to a particular member.**

Plaintiff's claim that the Guidance presently harms the parent-child relationship is again premised on speculation of what might occur if one of its members' children might have gender issues, might seek support at school, and what the District might do in response.  Plaintiff cites no authority to support a claim that the possible future application of a policy is sufficient to show current, actual harm to their relationship with their child.  The generalized claim of a constitutional right to familiar integrity is not a substitute for injury in fact.

The Guidance does not impact any members' relationship with their child.  As discussed above, the Guidance does not communicate to students that they should keep secrets from their parents.  It does not create an ability for a student to live "an entire double life at school."  This claim is contradicted by the language of the Guidance, which anticipates parental involvement and explicitly identifies that it is not a confidential document and that parents have a right to see it.

Regardless of how Plaintiff frames its arguments, nothing in the Complaint supports the claim that Plaintiff's members have suffered an injury that is concrete

and particularized and actual or imminent.  Plaintiff does not have standing to challenge a policy that has not and may not ever impact any of its members.

    **C.**    **There Is No Risk Of Harm That Is Sufficiently Imminent And Substantial That Would Allow One Of Plaintiff's Members To Bring A Pre-enforcement Challenge To The Guidance.**

Recognizing that none of its members have ever been impacted by the Guidance, Plaintiff asserts that even if its members have not yet suffered an injury, they have standing to bring a pre-enforcement challenge.  Plaintiff relies on several cases that have recognized standing to bring a pre-enforcement challenge, but none of the relevant factors supporting pre-enforcement challenges are present in this case.

The pre-enforcement challenge cases Plaintiff relies on all recognize and adhere to *Clapper's* holding that the material risk of future harm can satisfy the concrete harm requirement of standing only if the risk of harm is sufficiently imminent and substantial.  *See, e.g., TransUnion LLC*, 141 S. Ct. at 2210; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S. Ct. 2334, 2341, 189 L.Ed.2d 246, 255 (2014); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015). The "sufficiently imminent and substantial" requirement dooms Plaintiff's pre-enforcement argument.

Cases that have recognized pre-enforcement standing have typically been reserved for challenges to allegedly unconstitutional laws that subject a plaintiff to imminent criminal prosecution or civil penalties.  *See Susan B. Anthony List*, 573 U.S. at 158-59; *Brown v. Kemp*, 506 F. Supp. 3d 649, 656 (W.D. Wis. 2020) ("As the United States Supreme Court acknowledged in *Susan B. Anthony List*, however, the

U.S. Constitution permits 'pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent.'"). It is the threat of criminal prosecution or civil penalties that creates the risk of imminent and substantial harm.

To satisfy the "injury in fact" requirement of standing in a pre-enforcement challenge, a plaintiff must show: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) "proscribed by a statute"; and (3) "there exists a credible threat of prosecution thereunder." *Brown*, 506 F. Supp. 3d at 656 (citing *Susan B. Anthony List*, 573 U.S. at 159). However, "the mere existence of a statute adverse to plaintiff's interests is not sufficient to show justiciability." *Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 905-06 (E.D. Wis. 2002) (citing *Poe v. Ullman*, 367 U.S. 497, 508, 6 L. Ed. 2d 989, 81 S. Ct. 1752 (1961)). "Persons having no concrete fears that a policy or statute will be applied against them, except for those fears that are imaginary or speculative, are not accepted as appropriate plaintiffs." *Anders v. Fort Wayne Cmty. Sch.*, 124 F. Supp. 2d 618, 628 (N.D. Ind. 2000) (citing *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979); *Younger v. Harris*, 401 U.S. 37, 42, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971); *Golden v. Zwickler*, 394 U.S. 103, 22 L. Ed. 2d 113, 89 S. Ct. 956 (1969)).

Plaintiff does not identify its members' intention to engage in a course of conduct arguably affected with a constitutional interest. Plaintiff's members' conduct, in fact, is not at issue at all. It is Plaintiff's opposition to the District's conduct that is at issue. The absence of any facts to suggest that Plaintiff's members

intend to engage in any conduct precludes a finding of standing under the pre-enforcement doctrine.

Plaintiff attempts to manufacture conduct by arguing that parents must either withdraw their children from school or abandon their rights to public education, but that claim is speculative, and it does not involve any threatened enforcement of a law. Considering whether to withdraw one's child from public school cannot create an Article III injury. *See Am. Humanist Ass'n*, 859 F.3d at 1257 (citing *Lujan*, 504 U.S. at 564) ("A parent who elects to flee a school in response to Establishment Clause violations would certainly state an injury. . . But Roe's statement that he is considering the option of sending his daughter to a different school is insufficient to show such an injury is 'actual or imminent.'").

 Plaintiff also fails to allege that its members are subject to a threat, an actual arrest, prosecution, or other enforcement action. There are no allegations that the Guidance will be utilized to arrest, prosecute, or otherwise be enforced against anyone. Thus, Plaintiff's members' reaction to the existence of the Guidance does not create pre-enforcement standing.

Plaintiff also fails to recognize that no course of conduct is prohibited by the Guidance. Rather, the Guidance allows a student to request gender support. The Guidance does not punish or prevent the parent from taking any course of action. It enables the student to have input on how their gender identity information is shared with others but there is absolutely no prohibition against parents receiving the Gender Support Plan or being prevented from taking any particular course of action.

The lack of a threat of injury in this case is exemplified by the holding in *Linn-Mar Cmty. Sch. Dist.*, where the district court pointed out that the parents in that case had not alleged that the existence of a gender support plan was likely to cause any injury:

> The Court finds plaintiff has not shown a likelihood of success on the merits based on an alleged violation of the fundamental right of child rearing. Plaintiff is certainly correct no one can decide without proper process that a parent is unfit or should not be allowed to make decisions directed toward the care, custody, and control of their children. *See Stanley v. Illinois*, 405 U.S. 645, 651-52, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). **Plaintiff has not shown sufficiently, however, that there is any certain, impending action taken under the Policy that will interfere with that right**. Plaintiff does not allege on behalf of any of the parents that their children have been given a plan or allege with sufficient specificity that they will be given a plan. Nor does plaintiff allege these parents have been left out of any plan creation or sufficiently allege that they will with certainty soon be left out.
>
> Finally, plaintiff and parents do not allege they have been denied access to information about their minor children nor have they shown any certain impending denial of access. To be sure, that is not to say that the language of the Policy does not raise legitimate concerns about whether defendants could, or would fail to disclose to, or conceal information from, parents about their children's gender identity. The Policy itself is not explicit as to what standards schools will apply in supplying parents' information about their minor child's gender identity. Nevertheless, based on the record currently before the Court, plaintiff will have difficulty showing that the Policy violates their constitutional rights.

2022 U.S. Dist. LEXIS 169459, at *30-31 (emphasis added).

Plaintiff has entirely failed to show that it can demonstrate pre-enforcement standing. Plaintiff apparently recognizes that none of the elements that would permit a pre-enforcement challenge exist here, and instead argues that standing exists because its members face a "credible threat" that Guidance will be applied to

them. (App. R. 13, p. 42). Plaintiff's argument is superficial and not based on facts alleged in the Complaint.

Contrary to Plaintiff's argument, *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012) and *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1394-95 (6th Cir. 1987) do not support a claim that standing to assert a pre-enforcement claim extends to the possible future application of a policy that does not contemplate an enforcement action. Both cases concerned a pre-enforcement challenge to statutory provisions that evinced a credible threat of prosecution against the plaintiffs. For example, in *Planned Parenthood Ass'n of Cincinnati, Inc.*, the court found standing because the statute "clearly contemplate[d] that facilities such as the one operated by [plaintiff] would be subject to application of the [anti-abortion] statute." 822 F.2d at 1394-95. Neither case assists Plaintiff's standing argument.

Plaintiff's claim that *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 771, 166 L.Ed.2d 604, 614-15 (2007) supports that it has standing is even more strained. *MedImmune* was a declaratory judgment action between two private parties. The Supreme Court explained that in declaratory judgment actions:

> Our decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'

*Id.* at 127 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S. Ct. 461, 81 L. Ed. 617 (1937)).

Contrary to Plaintiff's claim, *MedImmune* does not stand for a broad principle that a party has standing to challenge a governmental policy any time they face a threat of the policy's application if the court can adequately assess the merits of the claim in a pre-enforcement posture. (App. R.13, p. 40). It merely re-affirms that to have standing to bring a declaratory judgment action there must be a "definite and concrete" dispute. *See MedImmune, Inc.*, 549 U.S. at 127. The possibility that a policy may eventually be applied to someone does not create an injury in fact.

Plaintiff's reliance on *Remijas* is similarly misplaced. *Remijas* also does not support a broad proposition that speculative future injury is sufficient to confer standing. In *Remijas*, plaintiffs complained of a data breach that had already occurred. 794 F.3d at 694-95. This Court determined that the plaintiffs had standing because they were clearly more susceptible to identity theft because of the breach, and this increased risk took their future harm out of the realm of being speculative. *Id.* This Court explained in *Remijas* that the standing inquiry was distinguishable from *Clapper* because "*Clapper* was addressing speculative harm based on something that may not even have happened to some or all of the plaintiffs." *Id.* at 694. Here, Plaintiffs' members, like the Plaintiffs in *Clapper*, may never be in a situation where their child's needs are addressed pursuant to the Guidance. Unlike the *Remijas* plaintiffs, Plaintiff has not shown that its members are any more susceptible to encountering the application of the Guidance.

### III.   THE EXISTENCE OF THE GUIDANCE HAS NOT PREVENTED PLAINTIFF'S MEMBERS FROM EXERCISING ANY RIGHTS.

In another attempt to manufacture standing in the absence of any actual or threatened injury, Plaintiff argued to the District Court that the existence of the Guidance conditions the right to attend public school on surrendering a constitutionally protected right.  Plaintiff does not assert this argument on appeal, but Amici Curiae has.  A court has no reason to address arguments that have not been raised by an appellant and which are only advanced by an amicus.  *See Sanders v. John Nuveen & Co.*, 554 F.2d 790, 794 (7th Cir. 1977) (citing *Knetsch v. United States,* 364 U.S. 361, 370, 81 S. Ct. 132, 137, 5 L. Ed. 2d 128, 134 (1960)).

Even if considered, this argument stretches the bounds of standing and ignores the facts in the Complaint.   "Essentially, the unconstitutional condition doctrine prohibits the government from doing indirectly what it cannot do directly . . . However, the doctrine does not give rise to a constitutional claim in its own right; the condition must actually cause a violation of a substantive . . . right." *Eklecco Newco LLC v. Town of Clarkstown*, No. 16-CV-6492 (NSR), 2019 U.S. Dist. LEXIS 85487, at *33 (S.D.N.Y. May 21, 2019) (internal citations omitted).  "[I]t has never been an overarching principle of constitutional law that operates with equal force regardless of the nature of the rights and powers in question." *Dolan v. City of Tigard*, 512 U.S. 374, 407 n.12, 114 S. Ct. 2309, 2328, 129 L.Ed.2d 304, 330 (1994) (J. Stevens, dissenting).  Moreover, "modern decisions invoking the doctrine have most frequently involved First Amendment liberties." *Id.* (collecting cases).

Amici Curiae's citation to *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 2697, 33 L.Ed.2d 570, 577 (1972), is unavailing. The Supreme Court merely reaffirmed that the government cannot deny someone a government benefit because that person exercised a constitutionally protected right, such free speech. *Id.* at 597. This general principal has been applied to denials of tax exemptions . . . unemployment benefits . . . welfare payments . . . [and] to denials of public employment." *Id.* (internal citations omitted). In this context, such claims are typically viewed as retaliation for having exercised a constitutional right. Plaintiff makes no such claim or retaliation, and instead simply objects to the Guidance under its bald claim that it is unconstitutional. None of Plaintiff's members have been subjected to any retaliation for their opposition to the Guidance, and the Guidance does not hinder the Plaintiff's members' right to send their children to public school.

*Carson v. Makin*, 142 S. Ct. 1987, 213 L.Ed.2d 286 (2022) does not assist Plaintiff's standing. In that case, the Supreme Court merely reiterated the unextraordinary principal that a "State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.* at 1996. Plaintiff's members have not been excluded from anything.

## IV. THE PPRA DOES NOT ASSIST PLAINTIFF IN SHOWING THAT ITS MEMBERS SUSTAINED AN INJURY IN FACT.

Plaintiff asserts that its members have been denied a "right to notice" under the PPRA, 20 U.S.C. § 1232h, and that the purported denial assists its members in formulating an injury for purposes of standing.[15]

Plaintiff appears to cite *FEC v. Akins*, 524 U.S. 11, 118 S. Ct. 1777, 1784, 141 L. Ed. 2d 10, 20 (1998) to support its informational standing argument, but Plaintiff reads *Akins* far too broadly. *Akins* does not hold that one's desire for information creates standing. Rather, *Akins* only held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information **which must be publicly disclosed pursuant to a statute**." *Id.* at 21 (emphasis added). Here, Plaintiff fails to show that any of its members have been denied "information which must be publicly disclosed pursuant to a statute."

The PPRA requires local authorities to develop policies to protect student privacy. 20 U.S.C. § 1232h(c). The PPRA affords parents of students certain rights regarding, among other things, participation in surveys, the collection and use of information for marketing purposes, and certain physical exams. *See* 20 U.S.C. §

---

[15] At the District Court, Plaintiff devoted six pages of its brief in opposition to the District's motion to dismiss to an argument that its members have standing because they can assert a 42 U.S.C. § 1983 claim related to an alleged violation of the PPRA. On appeal, Plaintiff appears to have abandoned that claim as it does not address it. Any claim that Plaintiff's members have a Section 1983 claim premised upon a violation of the PPRA should be viewed as having been waived. *See Pierner-Lytge*, 60 F.4th at 1043 n.1. Plaintiff mentions the PPRA in claiming that its members have been denied access to information, but that argument is largely undeveloped. *See* (App. R.13, pp. 30-31). "Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017).

1232h(c). And, the PPRA requires a school district to develop and adopt policies regarding:

> The right and procedures for a parent to <u>inspect a survey</u> created by a third party before the survey is administered or distributed by a school to a student (20 U.S.C. § 1232h(c)(1)(A) (i), (ii));

> Arrangements to <u>protect **student** privacy in the event of the administration or distribution of a **survey**</u> to a **student** if the survey touches upon mental or psychological problems, sex behavior or attitudes, and other topics not at issue here. (20 U.S.C. § 1232h(c)(1)(B));

> The right and procedures for a parent <u>to inspect instructional materials</u> (20 U.S.C. § 1232h(c)(1)(C));

> The <u>administration of physical examinations</u> or screenings that the school or agency may administer to a student (20 U.S.C. § 1232h(c)(1)(D));

> The collection, disclosure, or use of <u>personal information collected from students for the purpose of marketing or for selling</u> that information (20 U.S.C. § 1232h(c)(1)(E)); and

> The right and procedures for a parent to <u>inspect the instrument used to collect, disclosure, or make use of **personal information** collected from **students** for the purpose of marketing or for selling that information</u> (20 U.S.C. § 1232h(c)(1)(F)).

> The PPRA also requires notification to parents of:

> (i) Activities involving the collection, disclosure, or use of personal information collected from students for the purpose of marketing or for selling that information (or otherwise providing that information to others for that purpose).

> (ii) The administration of any survey containing one or more items described in clauses (i) through (viii) of paragraph (1)(B).

> (iii) Any nonemergency, invasive physical examination or screening that is—
>> (I) required as a condition of attendance;
>> (II) administered by the school and scheduled by the school in advance; and

(III) not necessary to protect the immediate health and safety of the student, or of other students.

20 U.S.C. § 1232h(c)(2)(C).

Despite Plaintiff's conclusory claim that its members have been denied "information" under the PPRA, it has failed to show that the Guidance implicates any "information which must be publicly disclosed pursuant to" the PPRA. *Akins*, 524 U.S. at 21. The only information that must be publicly disclosed pursuant to the PPRA are surveys created by a third party, instructional materials related to the curriculum, and the instrument used to collect personal information for the purpose of marketing or selling that information. The Guidance and the Gender Support Plan do not fall within any of these categories. Nothing in Plaintiff's Complaint implicates informational rights under the PPRA.

Plaintiff is also misguided in its claim that the Guidance and the Gender Support Plan implicates 34 C.F.R. § 98.4, which state states that: "No student shall be required, as part of any program specified in § 98.1 (a) or (b), to submit without prior consent to psychiatric examination, testing, or treatment, or psychological examination, testing, or treatment." 34 C.F.R. § 98.4(a). Plaintiff does not address the definition of a "program" under the PPRA.

A "program" is one administered by the Secretary of Education. *See* 34 C.F.R. § 98.1. "Section 1221 of the General Educations Provisions Act provides that an applicable program is any program for which the Secretary or the Department [of Education] has administrative responsibility as provided by law or by delegation of authority pursuant to law." *Herbert v. Reinstein*, 976 F. Supp. 331, 340 (E.D. Pa.

1997).  "The text of this statute and the regulations implementing it indicate that Section 1232h was meant to apply only to programs administered by the Secretary of Education." *Id.*  The Guidance and the Gender Support Plan are by definition not a "program" under the PPRA.

For Plaintiff to claim that the District is administering a "psychiatric or psychological examination" in violation of the PRRA, it must allege facts to show that the examination is related to a "program for which an administrative head of an education agency has administrative responsibility." *Newkirk v. E. Lansing Pub. Sch.*, File No. 1:91:CV:563, 1993 U.S. Dist. LEXIS 13194, at *13-14 (W.D. Mich. Aug. 16, 1993).  Despite this requirement, there are no allegations in the Complaint that plausibly suggest that any student in the District is required to submit to any examination that is part of any "applicable program." *See id.* at *17 ("[T]here is no contention that the 'programs' in which Jason Newkirk participated were 'applicable programs' under the federal statute.").  Without facts "to suggest that the specific programs at issue were in any way subject to federal administrative responsibility", *see id.* at *14, Plaintiff's claims about being denied information under the PRRA are erroneous.[16]  The Guidance and the Gender Support Plan are simply not a "program" under the PPRA and are not implicated by 34 C.F.R. § 98.4.

---

[16] Even if the PPRA was applicable, Plaintiff still failed to allege that any of its members suffered or are at substantial risk of suffering an injury caused by an alleged violation of the PPRA.  Again, such a claim is premised on the mischaracterization that the Guidance requires the District to deny Plaintiff's members information or sets up "roadblocks."  In reality, the Guidance does not state that information will be withheld from parents, and the Guidance and the Gender Support Plan does not require a student to complete that document without parental consent.  Plaintiff has not alleged that the District has required any child

## <u>CONCLUSION</u>

For the reasons set forth above, the District respectfully requests that this Court affirm the order of the District Court granting Defendants' motion to dismiss and dismissing Plaintiff's case.

Dated this 31st Day of May, 2023.

STADLER SACKS LLC
Attorneys for Defendants-Appellees

By:   <u>/s/ Ronald S. Stadler</u>
Ronald S. Stadler
State Bar No. 1017450
Jonathan E. Sacks
State Bar No. 1103204

3070 Helsan Drive, Suite J
Richfield, WI 53076
telephone: 262-304-0610
e-mail: rss@stadlersacks.com
jes@stadlersacks.com

---

to submit to any type any type of survey, analysis, or evaluation in conjunction with the gender identity support Guidance.

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)

The undersigned, counsel of record for the Defendants-Appellees, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this Brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced serif font.  The length of the brief is 11,131 words.

Dated this 31st Day of May, 2023.

STADLER SACKS LLC
Attorneys for Defendants-Appellees

By:     /s/ Ronald S. Stadler
        Ronald S. Stadler
        State Bar No. 1017450
        Jonathan E. Sacks
        State Bar No. 1103204

3070 Helsan Drive, Suite J
Richfield, WI 53076
telephone: 262-304-0610
e-mail: rss@stadlersacks.com
        jes@stadlersacks.com

## CIRCUIT RULE 31(e)(1) CERTIFICATION

I certify that the full contents of this Appellate Brief, from cover to conclusion,

has been electronically filed on May 31, 2023.

Dated this 31st Day of May, 2023.

STADLER SACKS LLC
Attorneys for Defendants-Appellees

By:    /s/ Ronald S. Stadler
       Ronald S. Stadler
       State Bar No. 1017450
       Jonathan E. Sacks
       State Bar No. 1103204

3070 Helsan Drive, Suite J
Richfield, WI 53076
telephone: 262-304-0610
e-mail: rss@stadlersacks.com
        jes@stadlersacks.com

41

## CERTIFICATE OF SERVICE

The undersigned, counsel of record for the Defendants-Appellees hereby certifies that on May 31, 2023, an electronic copy of the Appellees' Brief was served on counsel for Plaintiff-Appellant.

Dated this 31st Day of May, 2023.

STADLER SACKS LLC
Attorneys for Defendants-Appellees

By:     /s/ Ronald S. Stadler
        Ronald S. Stadler
        State Bar No. 1017450
        Jonathan E. Sacks
        State Bar No. 1103204

3070 Helsan Drive, Suite J
Richfield, WI 53076
telephone: 262-304-0610
e-mail: rss@stadlersacks.com
        jes@stadlersacks.com